IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

Plaintiff,

v.

JONATHAN LUCAS,                                       No. 9-CR-30114-DRH

Defendant.

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

Now before the Court is the United States of America's sentencing memorandum (Doc. 54) and defendant, Jonathan Lucas' sentencing memorandum (Doc. 57). Both parties agree that defendant should be sentenced again pursuant to the Fair Sentencing Act of 2010 ("FSA"); however they differ as to what defendant's sentence should be. Defendant also filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 in a related civil case, 11-cv-00829-DRH (Doc. 1). Both parties agreed to submit the matter to the Court without a hearing.

As in the typical sentencing matter, the Court must determine the correct guideline treatment as promulgated by the United States Sentencing Commission as the starting point of the analysis. However, that guidance is simply advice and this court has the discretion to vary, either up or down, from the sentence called for by those guidelines and the court must engage in such an analysis to

determine a sentence that is sufficient but not greater than necessary in its final decision.

On August 19, 2009, defendant was charged with one count of distribution of cocaine base also called "crack cocaine" in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). On June 7, 2010, defendant pleaded guilty to the count of selling 26.9 grams of crack cocaine, framing the statutory penalties. On August 3, 2010, the FSA of 2010 increased the statutory threshold for crack cocaine from 5 grams of cocaine base to 28 grams of cocaine base necessary to impose the penalties under 21 U.S.C. § 841 (b)(1)(B)(iii).

Defendant's counsel argued that under the FSA, no mandatory minimum applied to defendant. The government argued that defendant's crime occurred before the FSA and under then current Seventh Circuit case law at the time, the FSA did not apply retroactively to crimes committed before its passage. On September 9, 2010, the Court sentenced defendant to 120 months' imprisonment and eight years' supervised release pursuant to the earlier Sentencing Reform Act of 1984.

On June 21, 2012, the United States Supreme Court decided *Dorsey v. United States*, 132 S.Ct. 2321 (2012). In *Dorsey*, the Court, reversing the 7th Circuit, held that the FSA's new mandatory minimum sentencing provisions applied to all sentences imposed on or after August 3, 2010, regardless of when the offense conduct took place. *Id.*

In this case, the FSA applies to Lucas, who was sentenced after the FSA's enactment.  The crack cocaine quantity to which Lucas is accountable fails to trigger a post-FSA statutory minimum.  *See* 21 U.S.C. § 841(b)(1)(B)(iii) (2006 & Supp. V 2011) (prescribing no mandatory minimum for offenses less than 28 grams of crack cocaine). Lucas' relevant conduct was determined to be 53.8 grams of crack cocaine, based on two sales.  Relief is available to the defendant based on the statutory parameters and the sentence previously imposed is hereby **VACATED**.

On August 21, 2012, the Court ordered the parties to brief the issue of resentencing, to inform the Court of defendant's adjustment to corrective treatment, address the sentencing factors, and defendant's character and history in light of his criminal history.  The parties were directed to address whether the Court should consider a variance from the sentencing guidelines in light of defendant's criminal history.

The government, in its sentencing memorandum (Doc. 54), agreed that defendant should be resentenced under the FSA, and that his guideline range is 57-71 months.  However, the government urged the Court to vary from the guideline range, based on the factors in 18 U.S.C. § 3553 (a), and sentence defendant to 87 months' imprisonment.

In his sentencing memorandum (Doc. 57), defendant urges the Court to resentence him to the lowest possible sentence of 57 months' imprisonment. Defendant's reasoning is that before *Dorsey* was decided, he received the shortest

possible sentence the Court could give him, and therefore, under the newly calculated guidelines, a sentence at the low end would be reasonable and appropriate.

Both parties agreed a hearing was not necessary.

As noted above, the starting point for the Courts analysis is a determination of the Sentencing Commission's advice to this Court by way of calculating the guideline treatment. In the recent Supreme Court case of *Peugh v. United States*, ___ U.S. ___, 133 S.Ct. 2072 (June 10, 2013), the Court, reversing the 7th Circuit, ruled that should the use of the commission's manual in effect at the time of sentencing differ to the detriment of the defendant from that which was in effect at the time of the commission of his crime, the earlier manual must be utilized in order to avoid an *ex post facto* deficiency. The commission's policies parallel the statutory discussion which has ensued herein, although they actually were out in front in this instance rather than following and so the current edition of the manual actually inures to the defendant's benefit rather than his determent and so shall be used and avoids the *Peugh* issue.

In order to determine the advice from the commission to this Court in the sense of the guideline treatment of Mr. Lucas's case, one must focus on the relevant conduct of 53.8 grams of crack cocaine (two sales to the undercover agent of 26.9 grams each), turning to Section 2D1.1(7) of the 2012 Guideline Manual wherein the advice of the commission is to consider a base offense level of 26. No enhancements are applicable and the defendant is eligible, as before, for

acceptance of responsibility credit under both (a) and (b) of Section 3E1.1, reducing the offense level, by the commission's advice by three levels.  The total offense level resulting is a 23.  The defendant's criminal history category is a III.  The criminal history category is derived from an armed robbery conviction and a theft conviction as a juvenile, only the latter of which was accounted for as single point event.  Furthermore, the defendant had six felony drug convictions as an adult, all of which counted as single point convictions.  He had two other misdemeanor convictions and a felony conviction for which no points were assessed.  Three of the single points were discounted upon the commission's advice because it has determined that only four such single point convictions should count against a defendant.  However, the defendant was on probation at the time of the instance offense, so the commission recommends that two points be added to the criminal history score to account for that fact.  The total score of six results then in the commission's account of the category of III. The Court notes that this calculation was not disputed by either party, nor is the following conclusion.  The advice to this Court is that it consider a custodial range of 57 to 71 months, a fine range of $10,000.00 to $2,000,000.00, a supervised release range of at least 6 years, and further that the Court not consider a term of probation, which is prohibited by statute.

      The statutory terms are a term of imprisonment of not more than 30 years, at least 6 years of supervised release thereafter, a fine of not more than $2,000,000.00, as well as a prohibition against probation for this Class B felony.

Defendant urges the Court that in keeping with his earlier sentence of the lowest possible amount, his new sentence should be 57 months, the lowest end of the guideline finding noted above. The government urges the Court to move defendant to the next higher level of the sentencing guidelines and sentence him to 87 months.

Under 18 U.S.C. § 3553 (a), in imposing a sentence, the Court needs to consider, in part:

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**The Nature and Circumstances of the Offense**

The government makes much of the fact that defendant's offense of selling 26.9 grams of crack cocaine was "slightly less than an ounce," and just under the statutory minimum of 28 grams, and urges the Court to impose a sentence on defendant as if he had met the statutory minimum. The government argues the point that the defendant was a dishonest dealer and shaved some crack off for himself. Had he not done so and had he delivered the amount ordered by the confidential source, the minimum would have been met and so the Court should feel free and clear to hold defendant accountable for what the buyer intended and what an honest dealer would have dealt. The Court understands the

government's argument to be an invitation to the Court to exercise the discretion it has in all sentencing cases to fashion a sentence that meets the particulars of the case at bar. The Court in the instant case, however, does not find that the kind of dishonesty between dealer and customer equates to an intent to deal in excess of the statutory minimum. His dishonesty means he intended to be paid as though he dealt more than the minimum while actually dealing less than the minimum. The Court does not find that the defendant's particular brand of dishonesty should result in his qualification for the harsher penalties of the statute once that minimum threshold of drug quantity has been met. Such sales are far too routine in the experience of this jurist. Fraud between dealer and buyer is common place and for this Court to now adopt a stance that relevant conduct should include the buyer's intent is a slippery slope it does not want to take.

**The History and Characteristics of the Defendant**

In the government's sentencing memorandum, it calls the Court's attention to the defendant's past criminal history as well as his "poor adjustment to corrective treatment" to support its contention that a sentence higher than guideline range is appropriate. However, the Commission's advice in the guideline calculation resulted in an assessment of four points for his past criminal convictions, and an additional two points for commission of an offense while on probation. The Court finds the Commission's advice sound in this regard and

does not agree with the government's position that an upward variance is warranted.

However, the Court does take note of the defendant's criminal history and the multiple drug convictions with three rendered unaccountable under the commission's policy of counting no more than four single point convictions. This policy often makes sense for convictions that are of a minor nature, for example supervision for a DUI or for misdemeanor theft. The Court will concede that public opinion is trending toward that opinion regarding some of the convictions to which the Court raises in this instance, namely mere possession of cannabis. However, the fact is that possession of cannabis is still not legal in the State of Illinois and the fact that the defendant possessed it taken with the profile presented of the defendant with the record herein of a person who simply does not feel confined with an obligation to follow any rules, we have a need to instill a respect for the law and protect the public. Furthermore, the fact that those convictions were not accounted for gives this Court reason, at the very least, to sentence in the mid-range of the range of advice from the commission.

The government also supports its argument for an above guideline sentence with the fact that defendant has been written up for four offenses in the two years he has been at the Bureau of Prisons ("BOP"). Defendant counters this argument by his assertion that all four offenses were for one incident on October 13, 2011, when he stole some chicken from the kitchen where he was assigned to work. In

conjunction with the stealing, defendant was also written up for lying to staff, being absent from a work assignment, and being unruly.

In addition, to the specifics of the jailhouse infractions, the defendant generally argued the relative lack of seriousness of his criminal history and post conviction infractions.  The Court disagrees somewhat.  His criminal history, noted in the defendant's PSR and relied upon fully for the findings of this order, demonstrates a long and early history of infractions beginning with an aggravated robbery at age 12 and several drug offenses, one of which was a crime of delivery.

As for the prison infractions, the Court finds that although all four offenses occurred on the same day, their occurrence at all demonstrates defendant's unwillingness to adjust to the rules in prison similar to his inability to follow the law when he was not in prison. The Court finds this a significant issue, when taken in conjunction with his offense and criminal history, all of which clearly direct the Court's discretion away from a downward variance and away from a low end guideline.

**The Seriousness of the Offense, Promoting Respect for the Law, and Just Punishment**

The Court is aware of the need for the sentence imposed on defendant to reflect the serious nature of the offense, and agrees with the government that illegal drug sales pose a significant threat to the community.  Yet the Court is equally aware that defendant falls into the very category that the FSA was enacted to affect.  Surprisingly, despite all of the criminal history, briefly outlined above, the defendant is serving his first term of imprisonment, relied upon by the

defendant to argue for leniency. He has shown little respect for the law thus far in his life, quite the opposite in fact. The Court finds that the advice of the Sentencing Commission is sound as it relates to these factors of responding to the need to reflect the seriousness of the offense while promoting respect for the law and providing just punishment.

**Adequate Deterrence**

The Court is also required, if relevant, to consider the need for the sentence it imposes on defendant to provide adequate deterrence to criminal conduct. The government argues that an above guideline sentence would send a message that a drug dealer with a prior criminal history is subject to a longer sentence than the guidelines would suggest. However, the Court finds that a sentence within the guideline range still allows defendant considerable time to reflect on his past criminal behavior and provide a strong message of deterrence.

**Protect the Public**

The government appears to be of the mind that the longer the defendant is incarcerated, the longer the public is protected from further crimes he may commit. While the Court acknowledges the truth of this, and as alluded to previously, it is clear society needs protection from this defendant for a reasonable period of time. The Court finds that a sentence within the guideline will provide protection to the public.

**Provide Defendant with Needed Training and Treatment**

The Court is mindful that defendant is in need of educational and vocational training, as well as alcohol and drug treatment, which are available in the BOP. But there is no evidence that defendant cannot receive the needed training and treatment during a sentence within the guideline range.

**Conclusion**

The Court has considered the entire record in this case, the advice of the Sentencing Commission, the sentencing memoranda filed by each party (Docs. 55 and 57), as well as the statutory factors in analyzing the appropriate sentence in this case and, as it did in the original sentencing hearing, finds that a sentence within the Sentencing Commission's guideline range is appropriate, and addresses the seriousness of the offense and the sentencing objectives of punishment, deterrence, protection and incapacitation. Based on the Court's finding above, noting the seriousness of the crime, the defendant's criminal history, and noting that defendant continued to engage in activities that are in derogation of a rule-making authority, some of which are criminal in nature, the Court finds that the middle range of the guideline, 64 months is the just and reasonable sentence. Therefore, the Court **RESENTENCES** defendant to 64 months' imprisonment.

Accordingly, the Court **DISMISSES** Lucas' 28 U.S.C. § 2255 petition in case number 11-cv-00829-DRH as moot. The Court **RESENTENCES** Lucas to 64 months' imprisonment, 6 years supervised release, a $625.00 fine and a $100.00

special assessment. The Court **DIRECTS** the Clerk of the Court to enter an amended judgment reflecting the same.

**IT IS SO ORDERED.**

Signed this 10th day of July, 2013.

Digitally signed by David R. Herndon
Date: 2013.07.10 10:49:40 -05'00'

**Chief Judge
United States District Court**